156 So. 215

## TEXAS & P. RY. CO. v. CONSOLIDATED COMPANIES, Inc.

### No. 32768.

May 21, 1934.

Rehearing Denied July 2, 1934.

Carville & Carville, of Plaquemine, and Spencer, Gidiere, Phelps & Dunbar and Louisiana B. Claverie, all of New Orleans, for relator.

Borron, Owen & Borron, of Plaquemine, for respondent.

BRUNOT, Justice.

This is a suit for an alleged undercharge of freight on a shipment of beans from Saginaw, Mich., to Napoleonville, La. The sum prayed for is $100.74, with legal interest thereon from judicial demand and costs. The case was submitted on an agreed statement of facts, and judgment was rendered thereon in favor of the defendant and against the plaintiff rejecting the plaintiff's demand and dismissing the suit at its cost.

On appeal to the Court of Appeal, First Circuit, the judgment was affirmed, a rehearing was refused, an application to this court for certiorari or writ of review was granted, the record has been sent up, and the case is now before us.

The following are the admitted facts:

(1) "That on November 1st, 1927, the Consolidated Companies, Inc., through the Progressive Brokerage Company, Inc., of Plaquemine, Louisiana, ordered 400 bags of W. K. Beans from the Saginaw Milling Company of Saginaw, Mich. That on November 2nd, 1927, the Saginaw Milling Company delivered said 400 bags of beans to the Pierre Marquette Railway Company at Saginaw, Michigan, consigned to their own order at Napoleonville, Louisiana, notify Consolidated Companies, Inc.; that the routing instructions given at this time by the Saginaw Milling Company were 'Pierre Marquette, Clover Leaf, Missouri Pacific, Texas & Pacific,' all as will more fully appear by reference to a copy of the original bill of lading, which said copy is now a part of this record, being attached to and made a part of the supplemental and amended petition of plaintiff.

(2) "That on the 3rd day of November, 1927, and before said consignment of beans moved, and while it was in the possession of the Pierre Marquette Railway Company, the initial carrier, at Saginaw, Michigan, the consignor, Saginaw Milling Company, directed and instructed a change of routing of said car of beans to 'Pierre Marquette, Clover Leaf, Missouri Pacific, Southern Pacific,' instead of 'Pierre Marquette, Clover Leaf, Missouri Pacific, Texas & Pacific'; that said instructions to change the routing of said consignment of beans as aforesaid, were given both by telephone and by letter of same date, confirming said instructions by telephone, as shown by copy of said letter annexed to this statement of facts, and marked 'D 1' for identification; that said telephone instructions to change the routing of said car of beans was given at approximately 1:30 p. m. on November 3rd, 1927, and were given to the authorized agent of the Pierre Marquette Railway Company at Saginaw, Michigan, whose duty it was to make the proper routing, and that notice of said routing instructions was acknowledged by said authorized agent of said initial carrier, and assurance given that said change of routing would be made according-

ly; that in confirmation, and as evidence of such change in routing as per instructions, the authorized agent of the Pierre Marquette Railway Company delivered to the consignor, the Saginaw Milling Company, a copy of the transit freight way-bill, showing the change of routing of said consignment, and being car 'PM 40361' to 'Clover Leaf, Missouri Pacific, Southern Pacific,' and indicating time of change of routing as of 1:30 p. m., November 3rd, as shown by copy of transit freight way bill of Pierre Marquette Railway Company, which is attached and made a part of respondent's answer herein.

(3) "That the conductor of a train governs his actions as to the routing of each particular car making up his train by the shipping instructions contained in the transit Freight Way Bill.

(4) "That on the day and at the hour of said indicated change of routing, the consignment was in the possession of the initial carrier at Saginaw, Michigan, and had not moved.

(5) "That the original bill of lading, being in transit, having been mailed to Napoleonville, Louisiana, with sight draft attached, was not surrendered to the Pierre Marquette Railway Company when the said requested change in routing was made by the Saginaw Milling Company, and no notation of the change was endorsed thereon; that the said car of beans left the yards of the Pierre Marquette Railway Company in Saginaw, Michigan, at approximately 5:00 p. m., on the 3rd day of November, 1927, on train X1036; that said car was in the possession of the Pierre Marquette Railway Company until 4:35 p. m., November 4th, 1927, at which time said car reached Toledo, Ohio, which is the junction point of the Pierre Marquette Railway with the Clover Leaf Railway; that the route actually taken by the said car of beans was 'Pierre Marquette, Clover Leaf, Missouri Pacific, Texas & Pacific,' which was the route according to the original instructions given to the Pierre Marquette Railway Company by the Saginaw Milling Company on November 2nd, 1927; but not in accord with instructions subsequently given, changing routing as above set forth.

(6) "That, as per shipping instructions, upon delivery of the car of beans at Napoleonville, Louisiana, Consolidated Companies, Inc., was notified by the Texas & Pacific Railway Company of the arrival of the consignment; that Consolidated Companies, Inc., the purchaser of said beans, upon being notified by the agent of the Texas & Pacific Railway Company at Napoleonville, Louisiana, of the arrival of the said car of beans, accepted the said shipment and paid to the said agent freight thereon at the rate of $.71½ per cwt.; that the freight rate according to the schedule filed with and approved by the Interstate Commerce Commission over the Pierre Marquette, Clover Leaf, Missouri Pacific, Southern Pacific was $.71½ per cwt.; that the freight rate filed with and approved by the Interstate Commerce Commission over the Pierre Marquette, Clover Leaf, Missouri Pacific, Texas & Pacific route, and carried in S. W. L. 58-P, was $.96½ per cwt.

(7) "That the freight charges over the Pierre Marquette, Clover Leaf, Missouri Pacific, Texas & Pacific, based on the rate of $.96½ per cwt., aggregated $388.89, whereas the freight charges which were actually

paid by the Consolidated Companies, Inc., to the Texas & Pacific Railway Company, under the protecting rate in effect via Pierre Marquette, Clover Leaf, Missouri Pacific, Southern Pacific, based on $.71½ c. per cwt. aggregated $288.15, leaving a difference of $100.74, which plaintiff claims as an alleged undercharge.

(8) "That the provision of the bill of lading relative to Section 7 thereof was duly signed by the consignor as shown by copy of the original bill of lading filed in the record of this suit.

(9) "That the reconsignment circular of the Pierre Marquette Railway Company, which is annexed hereto and made part hereof, is a true and correct copy of the said tariff on file with the Interstate Commerce Commission, the same being effective on the date of the within shipment.

(10) "That defendant, while admitting the correctness of the reconsignment circular, as indicated by the document attached, defendant reserves the right to object and does object to the admissibility of said circular, as being immaterial and irrelevant to the issues involved, as the question does not concern a reconsignment or diversion of freight, but merely a change of routing, and further without admitting any binding effect on defendant, either as to its provisions or construction and definition of terms."

We note at the outset that, while the conductor of a train governs his actions as to the routing of a shipment of freight by the instructions contained in the transit freight way bill, it is the duty of the carrier to follow the routing instructions given it by the ship-

per; otherwise it is liable as for a conversion. Wiggins Ferry Co. v. Chicago Ry. Co., 128 Mo. 224, 27 S. W. 568, 30 S. W. 430.

The plaintiff does not contend that the shipper could not change the routing of the shipment. On the contrary, it is admitted that the routing was actually changed several hours before the shipment left the yards of the initial carrier. The contention is that the change in the routing was ineffective because, at no time, was the original bill of lading surrendered for indorsement or exchange, or a bond of indemnity executed in lieu thereof, or other approved security given.

The right of a shipper to change the original routing of a shipment is not questioned, provided that, in changing the routing, the requirements of the tariff are complied with. The pertinent part of the reconsignment tariff of the Pierre Marquette Railway Company is as follows:

"(e) On straight consignments the original bill of lading should be surrendered or other proof of ownership established. Except as provided in Note 4 of Rule 16 on shipments consigned 'to order' original bill of lading should be surrendered for endorsement or exchange, or in its absence satisfactory bond of indemnity executed in lieu thereof, or other approved security given at the time the diversion or reconsignment order is placed."

The plaintiff contends that a strict compliance with the foregoing tariff is sacramental to the validity of a change of the original routing of a consignment, and bases its contention upon the rule of strict construction applicable to all transportation tariffs, to the end that no shipper or consignee shall be pre-

ferred to others similarly situated. The defense is that the word "should," used in the tariff, is merely directory, and therefore the surrender of the bill of lading, the execution of a bond, or the giving of security could be waived, and, in this case, was impliedly waived. It is upon this theory that the judgment of both courts is based. We quote with approval from the opinion of the Court of Appeal the following:

"The word 'should' in the rule which the plaintiff invokes is directory. Being directory, a deviation is excusable under proper circumstances. If the rule had said that the bill of lading must be surrendered before any change can be made, then the mandate would have required absolute obedience; but, being directory, the shipper was not bound to surrender the bill of lading, and the initial carrier was not bound to insist on the surrender as a prerequisite to changing the route. The bond or other security which the rules provide for when the bill of lading is not surrendered, is for the protection of the carrier. In Swindler v. Texas & Pacific Railway Co., 5 La. App. 641, the route taken was the one which the shipper and initial carrier intended it should take, and it was taken. In that case the shipper was misinformed by the railroad's agent as to the rates which would be applied. The Swindler Case quotes and is based on La. Ry. & Navigation Co. v. Holly, 127 La. 615, 53 So. 882, 883."

What was really held in the Swindler and Holly Cases was that a mistake in the naming to the shipper a wrong rate did not affect the right of the carrier to collect the rate prescribed by the approved tariff. It is apparent that these cases do not touch the point in this case, and that the decisions are based upon an entirely different state of facts. Finding no error in the judgment under review, it is affirmed.