FRANGESCH and others, Respondents, vs. KAMP and others, Appellants.

*October 9—November 5, 1952.*

*Herman M. Knoeller,* attorney, and *Truman Q. McNulty* of counsel, both of Milwaukee, for the appellants.

*Walter J. Steininger,* attorney, and *Benjamin S. True* of counsel, both of Milwaukee, for the respondents.

FAIRCHILD, J.   Respondents' counsel are willing to admit that the complaint "may be inartistic in expression, and that it contains surplusage and irrelevant and redundant matter." However, there is no doubt that the respondents have succeeded in stating a cause of action arising out of the negotiations between themselves and appellants.

There were allegations in respondents' complaint, concerning the ownership of the property which respondents proposed to purchase, that the price agreed upon was $49,000. Respondents advised appellants that they "would sell their home in order to raise part of the purchase price," and it is alleged: "That pursuant thereto, the plaintiffs did, on said second day of August, 1951, pay the sum of $500 to the defendants;" that on the third day of August, 1951, the plaintiffs were requested by said defendants, Walter R. Kamp and Lillian M. Kamp, to pay an additional $4,500; that they did pay this additional sum at the time referred to, again explaining to the defendants (appellants here) the importance of the time element because the transaction involved the selling of their home.

The agreement between the respondents and appellants provided that the title to appellants' property would be guaranteed and a policy of title insurance delivered to respondents on or before September 1, 1951. Pursuant to the agreement respondents proceeded to arrange for the sale of their house and procured a *bona fide* purchaser, ready, willing, and able to purchase said real estate. The facts alleged clearly warrant the inference that the completion of the transaction re-

quired the compliance of the appellants with a prompt showing of title and the fixing of a time for closing the deal.

It is alleged that the appellants "failed to give the plaintiffs [respondents here] a definite date for the closing of said deal . . . but instead commenced a course of deliberate stalling and delaying the closing of said deal;" that appellants did not furnish the policy of title insurance; that the respondents repeatedly notified appellants that unless the deal was closed without further delay and a definite date fixed for occupancy, the respondents would lose the buyer of their property "whom they had obtained" and would then be unable to purchase the apartment building; that the appellants thereupon continued to stall and delay the closing and did represent that they could not set a definite date for closing or for occupancy prior to September 1, 1951, because they had not as yet received the preliminary report from the Title Guaranty Company; that appellants further represented that the deal would be closed immediately upon the appellants' receiving the preliminary report; that said representations were repeated until the 6th of September, 1951; that at that time respondents notified appellants that appellants' conduct constituted a breach of agreement.

Thereafter appellants mailed the preliminary title report to the respondents, and the complaint alleges that it had been in appellants' possession at all times from the 16th day of August, 1951, up to September 6, 1951. It is further alleged that the appellants deliberately failed to deliver the title report "so as to prevent the closing of the deal and to enable them to continue to stall and delay said closing," thus preventing the respondents from being able to sell their real estate and having the funds with which to purchase the appellants' property.

The appellant sellers, having been apprised of the reasons for the necessity of prompt performance on their part, were required to act in good faith in attempting to perform that

part of the agreement which required the policy of title insurance to be supplied to the respondents prior to September first. According to the allegations of the complaint, instead of acting in good faith, the appellants withheld from the respondents the preliminary report, issued with respect to the title insurance policy, from August 16th to September 6, 1951, thus preventing performance by respondents and causing the respondents to lose the prospective buyer of their own premises. Under the facts as pleaded, such acts on the part of the appellants constituted a material breach of the agreement which entitled the respondents to rescind and recover their down payment.

It is a rule of law that one who by mutual contract confers on another a right, or imposes a duty, impliedly agrees not to defeat that right or to make impossible the performance of that duty by any affirmative acts of his own. *Loehr v. Dickson,* 141 Wis. 332, 124 N. W. 293. The allegations of facts connected with the transaction described in the complaint present a pleading which brings before the court the circumstances to be established by satisfactory proof. It is unnecessary on this appeal to determine the nature of the action or the character of the evidence that may be controlling on trial. As a cause of action was stated in the complaint the demurrer was properly overruled.

With reference to the order granting a temporary injunction, we are of the opinion that the rights of the parties are to be determined by the terms of the contract, and that under the pleading as it now stands, although the respondents are entitled to relief, no part of a judgment which would follow may be said to consist of restraining some act, the commission or continuance of which during the litigation would injure the respondents. See sec. 268.02 (1), Stats. Therefore, that part of the order granting temporary injunction must be reversed.

*By the Court.*—That part of the order overruling the demurrer to the complaint is affirmed. That part of the order granting the temporary injunction is reversed. The costs to abide the final determination of the cause. Appellants to pay clerk's fees.