GEORGE and wife, Appellants, vs. OSWALD and another, Respondents.*

*September 10—October 9, 1956.*

---

* Motion for rehearing denied, without costs, on December 4. 1956.

For the appellants there was a brief by *Meyer H. Resnick*, attorney, and *Milton E. Zuleger* of counsel, and oral argument by *Mr. Ronald A. Padway* and *Mr. Zuleger*, all of Milwaukee.

For the respondents there was a brief by *A. R. Becker*, attorney, and *Eisenberg & Kletzke* and *John W. Bernard* of counsel, all of Milwaukee, and oral argument by *Mr. Bernard*.

MARTIN, J. Paul Oswald was the owner of a tract of land on Highway 100 which he listed for sale with Conrad Sailer, a real-estate agent. On March 3, 1954, plaintiffs signed an

offer to purchase said property for $17,000 and Oswald accepted. Among other things the offer included the following terms of payment:

"One Thousand Dollars ($1,000), tendered herewith, and Six Thousand ($6,000) Dollars more in cash on day of closing of sale, and the balance of Ten (10) Thousand Dollars to be paid on the day of closing of the sale of the buyers home at Oconomowoc, Wis., which should take place in about ninety days. . . . If this offer is accepted, the transaction is to be closed at the office of Sailer Realty Co. 2121 West North Ave. Milwaukee, Wis., on or before April 6th, 1954, . . ."

On March 4, 1954, George gave an exclusive listing contract for the sale of his Oconomowoc property to Sailer who had expressed the opinion that said property was worth $32,000. On April 12th plaintiffs received written notice demanding that the deal on the Highway 100 real estate be closed within five days, and on the following day Mr. George made written demand for the return of the $1,000 earnest money.

It is first contended that the offer to purchase is void as not complying with the statute of frauds in that the time of payment of the $10,000 balance was uncertain and indefinite.

The contract stated the sale was to be closed on or before April 6th. It also stated that the $10,000 balance was to be paid on the day of the closing of the sale of plaintiffs' Oconomowoc home. There is nothing in the contract to indicate that the closing of the deal depended on the sale of the Oconomowoc property. On the contrary, the wording of the contract does indicate that the sale of the Oconomowoc home could take place after the April 6th closing provided in the offer to purchase. In testifying to a discussion had with Sailer prior to drawing up the offer to purchase, Louis George stated:

"He [Oswald] would not take a mortgage on it and I told him that I didn't have the entire cash to pay but if my place,— property, could be sold, which is free and clear, I would be

able to pay for it in that way. So he told me if I gave him a listing on the property that he would arrange to sell it and in that way the money could be raised. He asked how much money I could pay on the place and I indicated that I could pay seven thousand dollars down and the ten thousand dollars would have to be carried until my property was sold."

In our opinion the understanding of the parties is expressed in the contract. The fact that the Oconomowoc home was not sold is immaterial since plaintiffs repudiated the contract before the expiration of ninety days from the date of the offer. In the absence of any showing to the contrary, we must assume that the Oconomowoc property was worth $32,000 as indicated and that it could and would have been sold within the ninety days had the deal been closed as the contract provided. As pointed out in *Frangesch v. Kamp* (1952), 262 Wis. 446, 450, 55 N. W. (2d) 372:

"It is a rule of law that one who by mutual contract confers on another a right, or imposes a duty, impliedly agrees not to defeat that right or to make impossible the performance of that duty by any affirmative acts of his own."

In dealing with Oswald's agent for the purchase of the Highway 100 property, plaintiffs were dealing with the same party with whom they were negotiating for the sale of their own property in Oconomowoc. We must assume that the statements made in the offer to purchase as to payment of the $10,000 balance within a ninety-day period were true and were capable of performance and, thus, that the terms stated were definite and certain.

In *Kenner v. Edwards Realty & F. Co.* (1931), 204 Wis. 575, 236 N. W. 597, a contract for the purchase of real estate, stating that the vendor was to procure a mortgage in a definite amount which he was negotiating with a third party and which the purchaser was to assume, was construed as sufficiently definite within the statute of frauds.

"In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of

parties who evidently intended to enter into a binding contract. . . ." 1 Williston, Contracts (rev. ed.), p. 100, sec. 37.

The contract further reads:

"The undersigned buyer, Louis F. George and Leone F. George (his wife) hereby offers to purchase the property known as concrete block building and about 3½ acres in the town of Wauwatosa, county of Milwaukee, Wisconsin, more particularly described as: The north one hundred (100) feet of the east one half (½) of the northeast one-quarter (¼) of section numbered thirty-one (31), in township numbered seven (7) north, range numbered twenty-one (21) east, in the town of Wauwatosa, having a frontage of about 100 feet, with a depth of about 1,276 feet, . . ."

Plaintiffs state that at all times they were negotiating for the purchase of three and one-half acres, but that from the legal description they could have no idea as to the quantity of land to be conveyed. They had viewed the property and paced it off; the contract, in addition to the legal description, stated "about 3½ acres" and gave the dimensions of 100 feet by 1,276 feet, which amount to somewhat over three acres, as testified by the plaintiffs' architect who examined the survey of the property. There was no inadequacy or ambiguity in the description of the land.

It is further stated in the contract:

"This offer is subject to the land must be industrial zoned, driveway should extend full frontage on Hy 100, satisfactory survey must be furnished, with boundary lines stacked, and setbacks. Road grade to be marked on present building. Minimum and maximum setbacks from middle of road to be clearly marked."

Plaintiffs contend that an existing easement for highway purposes constituted an incumbrance not excepted by defendants. We cannot agree. It may be noted that the contract provides:

"The seller shall, upon payment of the purchase price, convey the property by good and sufficient warranty deed,

free and clear of all liens and incumbrances, excepting: Municipal and zoning ordinances and recorded easements for public utilities; recorded building restrictions."

It has been held in *Miller v. Milwaukee Odd Fellows Temple* (1932), 206 Wis. 547, 559, 240 N. W. 193:

". . . restrictions imposed by the zoning ordinance or the laws of the state are not incumbrances within the meaning of that term as used in a contract to convey real estate. In this respect such restrictions are entirely different than the restrictions created by deed or contract." See also *Lasker v. Patrovsky* (1953), 264 Wis. 589, 60 N. W. (2d) 336.

Plaintiffs argue that authority to construct a driveway across the full frontage of the land was a condition precedent. The trial court found:

"That said contract was capable of substantial performance, and that the defendants had performed all of the requirements of said contract necessary to prepare said contract for consummation and execution, . . . of said contract was prevented by acts or failure to act of the plaintiffs."

There is ample evidence in the record to support the finding. Sailer testified that the offer to purchase was drawn by him three or four days prior to its execution and at that time he was not aware that a driveway could not be extended the full 100-foot frontage; that he checked with the highway department before the contract was signed, and before Mr. George signed it he advised him that it would be impossible to have such a driveway. He testified that he showed to George a sketch made by the highway department (Ex. 15) and explained that the law would permit two 40-foot driveways with 10 feet between.

On this evidence we must conclude that the language in the contract was not meant to state a condition precedent; that by the words "driveway should extend full frontage" the parties understood a full 100-foot driveway was desirable, but that two 40-foot driveways would serve the plaintiffs'

purposes. Under the circumstances in this case, the word "should" was not meant to be mandatory, but indicated desirability or preference. See *Texas & Pacific R. Co. v. Consolidated Companies* (1934), 180 La. 180, 156 So. 215; *Wallace v. Boston & Maine R.* (1904), 72 N. H. 504, 57 Atl. 913.

Although George testified he did not know of the driveway restriction until March 30th, he stated that he called Sailer a number of times after the contract was signed to see whether he had obtained *"permission* to put a full driveway in over the entire 100 feet of frontage." This would indicate he knew such a driveway was not allowed.

George had engaged an architect, Lloyd Ernst, to draw plans for buildings on the property. Mr. Ernst testified that the buildings, placed as George wanted them, could not be put on the property; that at George's request he tried to purchase more land, but could not. In a letter dated April 13, 1954, George wrote Sailer:

"This is your official notice that we are demanding the $1,000 deposit we have with your company. You will recall that I telephoned you on April 6, 1954, asking for the return of this money after you had been notified by Mr. Ernst, the architect, that the land was unsuitable for the purpose we intended it for. We would also like to point out that it is impossible to obtain a permit for a full driveway on the particular premises and this naturally would not be conducive to our business."

Obviously, plaintiffs found the land unsuitable because it would not accommodate the buildings as planned. The comment that less than a full driveway would not be *conducive* to the plaintiffs' business was apparently an afterthought.

There is nothing in the record to indicate that, prior to drawing up the contract, George had advised Sailer he could not use the property unless a 100-foot driveway would be permitted. On the trial George testified he told Sailer on March 30th that the deal was off,—

"That because of the heavy trucking that I had in and out of my place of business, a driveway with two drives on a small 100-foot lot would just not be conducive to traffic and I told him I wouldn't, under those circumstances,—I wouldn't be able to use the property."

There is no question the plaintiffs preferred a full frontage driveway and hoped to get permission to construct it, but the record fails to show any facts which would have rendered the property unsuitable if such a driveway were not permitted.

Plaintiffs cite *Helmholz v. Greene* (1921), 173 Wis. 306, 181 N. W. 221, where the condition that the purchaser satisfy the tenant in possession of the property was held to be a very material one. But here, where the plaintiffs signed the contract and paid $1,000 earnest money after being advised of the driveway restrictions, the provision that the "driveway should extend full frontage on Hy 100" cannot be construed as material.

*By the Court.*—Judgment affirmed.