Kirksey NIX, Petitioner,

v.

The STANDING COMMITTEE ON JUDICIAL PERFORMANCE OF the OKLAHOMA BAR ASSOCIATION and its Members, Howard McBee, Don Benson, Floyd L. Rheam, and Harold Sullivan, Respondents.

No. 42039.

Supreme Court of Oklahoma.

Dec. 27, 1966.

Jim A. Rinehart, El Reno, Norman & Wheeler, Muskogee, Roehm West, Tulsa, George Hill, McAlester, Jas. H. Harrod, Oklahoma City, Ed Parks, Tulsa, for petitioner.

Jack A. Swidensky, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for respondents.

WILLIAMS, Justice.

Petitioner is a member in good standing of the Oklahoma Bar Association created by certain of this Court's rules. (5 O.S. 1961 Attorneys and State Bar, Chap. 1, App. 1; Const. of Okla., Art. IV—Distribution of powers § 1; Ibid, Art. 7 Judicial Department § 1; In re Integration of State Bar of Oklahoma, 185 Okl. 505, 95 P.2d 113). He also is a duly elected, qualified and acting Judge of the Court of Criminal Appeals of our State. (Const. Art. 7, § 2; 20 O.S.1961, § 31 et seq.)

Earlier this year and while serving as such judge petitioner filed his notification and declaration as a candidate (26 O.S. 1961, § 161) seeking to be selected by the

Democratic Party as its nominee for the office of Attorney General of Oklahoma (Const., Art. VI, § 1). At no time did he submit his resignation as such judge.

At the time Judge Nix filed as a candidate for the office of Attorney General there were in existence in Oklahoma certain Canons of Judicial Ethics (5 O.S.1961, Chap. 1, App. 4). Canon 30 thereof was and is of pertinent provision as follows:

"While holding a judicial position he should not become an active candidate either at a party primary or at a general election for any office other than a judicial office. If a judge should decide to become a candidate for any office not judicial, he should resign in order that it cannot be said that he is using the power or prestige of his judicial position to promote his own candidacy or the success of his party."

The disposition herein made of the matters, acts and things involved in this proceeding renders unnecessary any further quotation from that Canon or reference to other Canons allegedly applicable to Judge Nix's situation.

Previous to the occurrence of the matters, acts and things here concerned this Court had by its Supreme Court Bar Docket No. 2040 Order created and the Bar Association's Executive Council had appointed respondent committee. By that order that committee had generally been assigned the task, among others, of assisting this Court in the investigation of charges that any lawyer—judge members of the Association had committed acts involving moral turpitude, thereby forfeiting their right to retain this Court's certificate of a good moral character accompanying their respective licenses as attorneys and counsellors at law and, further, recommending whether disciplinary action should be taken. Provision was made for reports by the committee through the named Executive Counsel and the submission of same by the latter or its Central Committee, after review, to this Court with its recommendation.

The first information given this Court of the pendency of any proceeding involving a variance between the views of Judge Nix and those of the Bar Association was by the filing of a "Report" by its Executive Council charging Judge Nix with having violated Canon 30 and three other numbered Canons by his having made the above described filing for the stated office. By our S.C.B.D. No. 2066 Order we invited the attention of the Bar to our S.C.B.D. No. 2040 Order, (36 O.B.J. 797), supra, (creating respondent committee), returned the "Report" to the said Executive Council "with the suggestion that if a complaint is to be filed it should be drawn in proper form so that the Standing Committee on Judicial Performance and the Hon. Kirksey M. Nix may be apprised of the nature of the complaint," sought "to insure due process" (with reference to the giving of notice to petitioner herein) and suggested as follows: that in making its "report of investigation" the committee "should give consideration to the question of what action, or discipline, if any, may be taken or imposed by this Court if it is determined that the said Kirksey M. Nix has violated one or more of said Canons. The procedure set forth in our Order of May 5, 1965, S.C.B.D. No. 2040, supra, for reporting to this Court will be followed."

Thereafter, by order of such Executive Council of the Oklahoma Bar Association, a complaint was filed against petitioner before the aforesaid Standing Committee on Judicial Performance alleging violation by petitioner of Canon 30 (and other Canons respecting political activity on the part of a judge, etc.) and praying that he be disciplined.

Thereupon petitioner filed the present original proceeding wherein he seeks a writ prohibiting the named committee, the Bar Association and others from attempting to exercise jurisdiction or further proceeding with their complaint against him. For the reasons indicated hereinafter we have decided to exercise jurisdiction and determine the within matter.

 A ground, among others, specified by Judge Nix for here seeking relief is that the Canons of Judicial Ethics as applicable to his present situation are advisory only and have not the force of binding legal obligation. We agree.

As originally adopted by this Court, such Canons of Judicial Ethics then contained a preamble stating that the American Bar Association adopts such "Canons, the spirit of which it suggests as a proper guide and reminder for judges, and as indicating what the people have a right to expect from them." (5 O.S.1961 Attorneys and State Bar Chap. 1, App. 4).

That preamble states the opinion of the American Bar Association "that declared ethical standards tend to become habits of life" and that the Canons "set forth its views respecting those principles which should govern the personal practice of members of the judiciary in the administration of their office."

It would appear that as of the date of the adoption by it of such Canons, The American Bar Association was hopeful that all judges in America would follow the various suggestions in the thirty-six different Canons, such as being considerate of jurors, not appointing their kinfolk as bailiffs and court reporters, not letting corporations use their names in advertising stock sales, not running for non-judicial office, etc., etc.

This Court in its order originally adopting the Canons with which we are here concerned (S.C.B.D. #1698, Order dated Sept. 30, 1959) specifically stated that the application of the Bar Association Committee and Sub-Committee "for adoption of Canons of Judicial Ethics as adopted by the American Bar Association" came on for hearing; that the Court being advised, etc. "finds that" such Canons "as adopted by the American Bar Association should be and are hereby adopted" by this Court except for a recited amendment; made the amendment and then ordered that "with the above amendment as above set forth, the said Canons of the American Bar Association [are] hereby adopted."

Respondent committee (and its members) argue that this Court has asserted that it has the power and that it is its duty to investigate and discipline lawyers who are also judges of the Courts of this State whose conduct warrants such action. Many authorities from various jurisdictions are cited. It is noted that any such action deals only with such person as a lawyer, not as an official. Hence the inapplicability of our new provision, Constitution, Art. VII–A. Assertion is made that respondents are proceeding under our orders in exact compliance with terms and spirit thereof.

Argument is advanced that under such authorities as Matney v. King, 20 Okl. 22, 93 P. 737, Dancy v. Owens, 126 Okl. 37, 258 P. 879, In Re Stolen, 193 Wis. 602, 214 N.W. 379, 55 A.L.R. 1355, affirmed 193 Wis. 602, 216 N.W. 127 and Collins v. Godfrey, 324 Mass. 574, 87 N.E.2d 838, this Court, pursuant to Const. Art. VII § 2, in order to prevent the judiciary being held "up to public scorn" and it and the legal profession being brought "into disrepute," "without being obliged to call the legislative department to its assistance," and though the Canons of Ethics "are not in themselves law" and "admittedly, they are 'not substantive law' (Deupree v. Garnett, Okl., 277 P.2d 168, 175) nor do they have the 'force of law' (Lyles v. St. of Oklahoma, Okl.Cr., 330 P.2d 734, 738), yet this Court may 'control the other inferior courts,' * * *."

In our view, this situation is not altogether unlike that of a State, through its Legislature, adopting a statute of a sister State. In doing so, the adopting State presumably takes its new law with any interpretation previously given it by the courts of the State in which the law was spawned. Gripe v. Sinor, Okl., 416 P.2d 902; Anderson v. Anderson, 140 Okl. 168, 282 P. 335, 74 A.L.R. 1231.

Our view of this entire matter herein expressed is not without support in judicial expression. In the case of State v. McCarthy, 255 Wis. 234, 38 N.W.2d

679, there was involved the situation of Circuit Judge Joseph R. McCarthy, without first resigning, running for and being elected to represent the State of Wisconsin in the U. S. Senate. By provision of the Constitution of his State (Art. VII, Sec. 10) a judge of his station was prevented from holding any other than a judicial office during the term to which he had been elected and any votes for a non-judicial office given him by the legislature or the people would be void. Acceptance of the office of U. S. Senator would vacate his judicial office. State ex rel. Hazelton v. Turner, 168 Wis. 170, 169 N.W. 304. As both lawyer and judge, he had sworn to uphold his State Constitution. The Wisconsin Court in that case said, "(T)here is little difference in the moral quality of being a candidate and holding the office if elected." The Court said the only respect in which Judge McCarthy was found to have violated Canon 30 was in his "failure to resign when he became a candidate for office of United States Senator." The Court there said:

> "While it is true that the canons of ethics, both those governing the conduct of lawyers and of judges, set up standards which should be faithfully observed by those to whom they are applicable they do not amount to rules of conduct for which a lawyer or a judge may be punished as for a misdemeanor or a crime. A violation of the canons may or may not involve moral turpitude, depending on the circumstances."

That Court determined that although Judge McCarthy had violated the Constitution and statute and his oaths of office as a judge and as a lawyer by seeking a non-judicial office during his term of office as a judge, he still had not been shown to have evinced "such a degree of moral turpitude that he is unfit to discharge the duties of an attorney at law." The Court dismissed the proceeding.

Here, we have no statute stating Judge Nix could not run. There was then only a Canon, the spirit of which suggested that he should not do so.

In Magnuson v. County of Grand Forks, N.D., 97 N.W.2d 622, to which we have been referred by petitioner, in connection with his argument as to effect of preamble to the Canons, supra, the Court quoted two dictionaries to demonstrate that "should" is a weaker word than "ought". See also George v. Oswald, 273 Wis. 380, 78 N.W.2d 763.

We have held on several occasions that "An attorney violating any of such canons shall be subject to discipline or disbarment, * * *", Article 10 of The Revised Rules Creating, Controlling and Regulating the Oklahoma Bar Association, 5 O.S. 1961, Chap. 1, App. 1.

No provision of this Court's Rules Creating, Controlling and Regulating the Oklahoma Bar Association in effect prior to the adoption of our new "Rules Creating and Controlling the Oklahoma Bar Association", effective when and as published in the Oklahoma Bar Journal, vol. 37, pp. 1726–1746 on September 24, 1966, provides for the imposition of discipline following violation of the Canons of Judicial Ethics as distinguished from the Canons of Professional Ethics.

The situation of a Judge of the Court of Criminal Appeals running for a non-judicial office is not at all comparable to that of a Supreme Court Justice doing so. The distinction is that the Legislature, speaking for the people of Oklahoma, has said in 20 O.S.1961 Courts, § 5 that: "No justice of the Supreme Court shall become, during the term for which he may be elected or appointed, a candidate for any office other than a judicial position."

Article IV, § 1 of our Constitution, after providing that "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial;" further states: "and except as provided in the Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct, and neither

shall exercise the powers properly belonging to either of the others." By Article V, Constitution, § 1, "The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives;" with the people reserving the right to propose constitutional amendments and laws. The Oklahoma Constitution, Article III, § 5, states that "The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for State, District, County and municipal officers * * *"

As above stated, there is no statute in our state that in anywise prohibits a Judge of the Court of Criminal Appeals from becoming a candidate for a non-judicial office.

The Constitution (Art. VI, § 3) does fix the eligibility requirements for candidates for Attorney General. Petitioner argues that where the Constitution prescribes qualifications for constitutional officers neither the legislature nor the Canons of Judicial Ethics may impose additional ones.

In our view it is not necessary in this case to pass upon the question posed by that argument. Likewise, determination of the validity of petitioner's argument herein that the people of Oklahoma may be heard to speak only through their Constitution and statutes as to requirements with reference to judge-candidates running for non-judicial office, under our interpretation of applicable Canons as effective of dates with which we are concerned herein, as well as the applicability and validity of his other arguments, is not required in this proceeding.

Neither the Legislature nor the people have said a Judge of the Court of Criminal Appeals shall not run for a non-judicial office, as was done in the case of Supreme Court Justices and as has been done in the case of Supernumerary Judges. It would appear a Judge of the Court of Criminal Appeals may legally be a candidate for non-judicial office, and still retain his judicial position, if the Canons do not prevent it. And apparently, as of the date of Judge Nix's filing here involved, they did not. This Court adopted the Canons in the spirit in which they were suggested, that is, to serve as models of emulation, not as purported rules, laws or judicial fiat.

We determine that by the adoption by this Court of the Canons of Judicial Ethics as previously adopted by the American Bar Association (and before their recent incorporation by reference into Article IX, § 8 (37 O.B.J. 1733) of our new such Rules, Canon 30 and others referred to in the pleadings and by the parties herein as being applicable to the petitioner's situation were of persuasive force only and not mandatory.

Writ granted.

JACKSON, V. C. J., and DAVISON, BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., concur.

BERRY, J., concurs in result.

HALLEY, Chief Justice (dissenting):

I respectfully dissent from the majority view in this matter. The factual situation herein is well set forth in the majority opinion and need not be repeated here.

Judge Nix, by appropriate pleadings, has asked this court to prohibit the Standing Committee on Judicial Performance and the Oklahoma Bar Association from attempting to exercise any jurisdiction over him or proceeding further against him on their complaint that he has violated certain of the Canons of Judicial Ethics. My brothers on the majority are inclined to the view that the Writ should be granted.

Their view is based on the idea that the Canons of Judicial Ethics, which we adopted by our order of September 30, 1959, are advisory only, with respect to the conduct of a judge. I do not agree with this view. I believe the Canons of Judicial Ethics are more than just advisory insofar as a judge and his conduct while a member of the judiciary are concerned.

Bearing in mind that my comments herein should not be interpreted as having a

bearing upon the question of whether or not Judge Nix is guilty of misconduct under the Canons of Ethics, but are restricted solely to the question before us, namely, should the writ requested by him be granted, the following comments are appropriate.

When an attorney becomes a judge, he does not cease to be an attorney and a member of the bar. One of the qualifications for a person to sit in a judicial capacity in Oklahoma, other than as a Justice of the Peace, is that he be a member in good standing of the Oklahoma Bar Association. Until the adoption of our new rules, see Oklahoma Bar Journal, vol. 37, pp. 1726–1746, September 24, 1966, especially Article II, sub-section (a) therein, it was permissible for a duly elected judge of a court of record of this state to take the status of an "inactive" member of the Oklahoma Bar Association, i. e., one not engaged in the active practice of the law. If he so desired, he could retain his "active" membership in the Bar Association. The only difference readily apparent, insofar as the individual judge was concerned, was that his dues to the Bar Association were less as an "inactive" member than as "active" member. He could not engage in the active practice of law in either capacity because of his position as a judge.

We have heretofore by rule established Canons of Professional Ethics for attorneys. See Title 5, OSA, 1961, Chapter 1, Appendix 3 thereof. It stands without argument and is beyond dispute that the Bar Association and this court, may under the provisions of the above mentioned Canons of Professional Ethics charge, try and punish an errant member of the Bar Association for violating one or more of the above mentioned Canons. As is stated in the case of Jenkins v. Oregon State Bar, 241 Or. 283, 405 P.2d 525, (Oregon, 1965), wherein one Jenkins, a judge of the district court, having been served with a complaint alleging instances of professional misconduct, under Oregon Canons of Judicial Ethics, sought a Writ of Prohibition:

"The next question is whether a violation of a rule of judicial ethics is a proper case for the exercise of disciplinary jurisdiction. This tests the question of whether the Canons of Judicial Ethics in this state are rules, or merely recommendations. A practicing attorney is answerable for conduct which is not a public offense, but which violates one or more of the Rules of Professional Conduct. Is there some good reason a judge should not likewise answer for professional misconduct which does not amount to crime?

"We have been unable to discover a valid reason for holding that while a judge can be stricken from the rolls of attorneys for criminal behavior he should be immune from disciplinary action in cases involving reprehensible conduct that falls short of crime. We hold that rules of professional conduct, including judicial conduct, are binding on judges."

"There would have been no purpose in the adoption by this court in 1952 of the Canons of Judicial Ethics if they were to be merely hortatory. This Court has said, in connection with a lawyer's misconduct:

"The rules promulgated by this court concerning professional and judicial ethics are not merely pious exhortations. They were established to be obeyed and they create rights corresponding to the duties imposed * * *."

The Oregon court went on to say:

"The Canons of Judicial Ethics are just as binding upon lawyers and judges as the Rules of Professional Conduct are binding upon lawyers and judges in cases falling within the purview of those rules."

* * * * * *

"With reference to the independence of the judiciary, this court yields to none in its conviction, that the judiciary must be free of partisan or other influences prejudicial to the impartial administra-

tion of justice. But we are not prepared to hold that independence carries with it a license to violate the law or the rules of professional conduct which in this state have the force of law insofar as the internal discipline of the legal profession is concerned. There is no divine right of judges to flout the law."

The Oregon court refused to grant the Writ prayed for. I agree with the Oregon decision and think that the decision made therein should be our decision here.

In my view, our decision in the case of Chambers v. Central Committee of the Oklahoma Bar Association, 203 Okl. 583, 224 P.2d 583, in no wise would prevent us from so ruling. The Chambers' case is distinguishable from the case at hand. The substance of our opinion in that case was to withhold from the Bar Association the power to investigate an attorney while he was serving as a judge. In the instant case, by our orders in S.C.B.D. No. 2040 and 2066, we have authorized the Standing Committee on Judicial Performance to conduct an investigation in this matter and to make its report to this court.

I dissent.