933 So.2d 38 (2006)
Sondra FLECK-RUBIN f/k/a Sondra Fleck, individually and as cotrustee of the Sidney Fleck Trust Agreement u/w/a December 10, 1973; and Gary Fleck, as guardian ad litem for Sondra Fleck-Rubin, Appellants,
v.
Aaron FLECK, as a contingent beneficiary and cotrustee of the Sidney Fleck Trust Agreement u/w/a December 10, 1973; Barry Fleck; Gary Fleck; Stephanie Fleck-Morin; and Melanie Spiegelman f/k/a Melanie Singer, Appellees.
No. 2D04-5637.
District Court of Appeal of Florida, Second District.
May 12, 2006.
Rehearing Denied July 11, 2006.
*39 Jane Kreusler-Walsh and Barbara J. Compiani of Jane Kreusler-Walsh, P.A., West Palm Beach, and A. Lamar Matthews, Jr., of Matthews, Eastmoore, Hardy, Crauwels & Garcia, P.A., Sarasota, for Appellants.
Michael J. Pugh of Levin, Tannenbaum, Wolff, Band, Gates & Pugh, P.L., Sarasota, for Appellee Aaron Fleck, as a contingent beneficiary and cotrustee of the Sidney Fleck Trust Agreement u/w/a December 10, 1973.
No appearance for Appellees Barry Fleck, Gary Fleck in his individual capacity, Stephanie Fleck-Morin, and Melanie Spiegelman f/k/a Melanie Singer.
SALCINES, Judge.
Sondra Fleck-Rubin appeals from a partial summary judgment in which she was ordered to return funds and assets she had removed from a trust. We reverse.
On December 10, 1973, Sidney Fleck, Sondra's husband until his death in 1981, executed a trust agreement which called for a division of trust assets into two trust estates upon his death  Trust A and Trust B. In the trust agreement, Sidney appointed as cotrustees his wife, Sondra, and his brother, Aaron Fleck. Sidney named his wife primary beneficiary after his death and the sole beneficiary of Trust A during her lifetime. After Sidney's death, the trust became irrevocable. Pursuant to the trust agreement, the trust property was divided and placed into Trust A and Trust B.
Trust A was a marital trust to be "administered in accordance with paragraph 3 hereof" and consisted of "such portion of the trust property as shall afford to Sidney Fleck's estate the maximum marital deduction allowable in the determination of the federal estate tax." Trust B was a credit shelter trust to be "administered in accordance with paragraph 4 hereof" and consisted of "all property not allocated to Trust A." Trust B terminated when Sondra remarried in November 1987.
Over twenty years after Sidney's death, Sondra asked the trust administrator to deliver the funds and assets of Trust A to her and the administrator complied. The cotrustee of Trust A, Aaron, filed suit against Sondra and was successful in obtaining a partial summary judgment which ordered Sondra to transfer to Aaron, as cotrustee, "all of the funds and assets" she had withdrawn from the trust and further directed Aaron to manage the funds and assets for Sondra's benefit during her lifetime. This appeal ensued.
The present appeal involves the trial court's interpretation of a trust agreement and the entry of a partial summary judgment. Because there is no genuine issue as to a material fact in this matter, the only question for this court is whether the trial court correctly applied the law. Our standard of review of a trial court's ruling on a motion for summary judgment regarding a pure question of law is de novo. Roberts v. Sarros, 920 So.2d 193, 194-95 (Fla. 2d DCA 2006).
*40 In this appeal, we are asked to determine whether the terms of the trust agreement permitted Sondra to remove all the funds and assets of Trust A without her cotrustee's consent. The trial court considered two provisions in determining that Sondra did not have the authority to unilaterally remove the funds and assets of Trust A  paragraph 3(a)-(e) and paragraph 9(f). Paragraph 3(b) provides that "[t]he Trustees shall make distributions to my wife from the principal of Trust A, even to the complete exhaustion thereof...." (Emphasis added.) Paragraph 9(f) provides:
9. The following additional provisions and limitations, when applicable, shall govern the administration and disposition of the trust property:
....
(f) Notwithstanding any provision to the contrary elsewhere contained in this instrument, neither my wife nor any lineal descendant of mine shall, while serving as a Trustee hereunder, participate in the exercise by the Trustees of any discretionary power or authority conferred upon the Trustees by any provision of this instrument with respect to the distribution, or the withholding from distribution, of the principal of any trust estate held hereunder for the benefit of such one or with respect to the distribution, the withholding from distribution, or other application of the net income therefrom; and all such powers and authorities shall be exercised solely by the other Trustee.
(Emphasis added.)
The trial court determined that paragraph 9(f) required Sondra to obtain the authorization of the cotrustee, Aaron, for the transfer of the funds and assets from Trust A to herself since she was then the beneficiary and a cotrustee of that Trust. Paragraph 9(f), however, applied only to a trustee's exercise of any discretionary authority. The unambiguous language of paragraph 3(b) allowed Sondra to demand distributions from Trust A "even to the complete exhaustion thereof." Such distributions were not subject to the approval or discretion of Aaron, as cotrustee, since paragraph 3(b) provided that the trustees "shall make distributions" requested by Sondra. Because the trustees had no discretion under paragraph 3(b), paragraph 9(f) was inapplicable.[1]
Accordingly, we reverse the partial summary judgment and remand for further proceedings consistent herewith.
STRINGER and LaROSE, JJ., Concur.
NOTES
[1] Paragraph 3(b), however, required that Sondra's request for all the assets had to be made "by written instrument signed by her and delivered to the Trustees during her life." Our review in the present appeal is limited to whether Sondra had the authority to remove all the assets of Trust A without obtaining Aaron's approval. On remand the trial court may consider whether Sondra otherwise satisfied the requirements of paragraph 3(b).