EVANDER, J.
 

 This is an appeal from a partial summary judgment order invalidating a transfer of over seven million dollars from the Elinor Estes Miller Trust to the Thomas W. Miller,
 
 Jr.,
 
 Trust (“Bill Miller Trust”) and directing that such monies be held in constructive trust for the benefit of the Elinor Estes Miller Trust and its remain-derman, Thomas W. Miller,
 
 III,
 
 (“Tom”). We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii).
 

 Thomas W. Miller, Jr. (“Bill”) was the trustee and lifetime beneficiary of a trust established by his wife, Elinor Miller. Upon Elinor’s death in 1999, her trust assets were distributed to designated charities and family members with the balance being divided into three separate sub-trusts, designated as Trust A-l, Trust A-2 and Trust B, with each serving a distinct purpose. This appeal relates solely to the Trust A-2 assets. The trust language critical to the resolution of this appeal provides:
 

 V.
 

 Administration of Trust “A”
 

 2. With respect to Trust “A-l” and Trust “A-2”, the Trustee shall pay quar
 
 *323
 
 terly or oftener, the entire net income derived from the trust estates to my husband, THOMAS W. MILLER, JR., so long as he shall live. In addition thereto, the Trustee shall pay to my husband, THOMAS W. MILLER, JR., such amounts from the principal of Trust “A-2” first and then from “A-l” after the exhaustion of “A-2”, as it deems necessary or advisable to provide liberally for his maintenance, health, and support in his accustomed manner of living, taking into account all of his other income and means of support known to the Trustee.
 
 The Trustee shall also pay to my husband such additional amounts of principal from Trust “A-2” as he may from time to time request. ...
 

 3. Upon the death of my husband, THOMAS W. MILLER, JR., the Trustee shall pay over and distribute the then remaining balance of Trust “A-2”,
 
 if any,
 
 to such person or persons, and in such manner, as he shall appoint by his last Will and Testament, which makes reference to said power of appointment, including in him the power to appoint to his estate.
 
 Any portion of Trust “A-2” not effectively appointed by my husband, THOMAS W. MILLER, JR., shall continue to be held in trust for the lifetime of my son, THOMAS W. MILLER, III,....
 

 (Emphasis added.)
 

 On February 11, 2000, Bill executed a third codicil to his last will and testament. In this codicil, Bill purported to exercise his power of appointment by directing that, upon his death, the Trust A-2 balance be distributed to The Elinor and T.W. Miller, Jr. Foundation (“the Foundation”).
 

 Between the date of his wife’s death and January 25, 2002, Bill, as trustee, transferred approximately $420,000 from Trust A-2 to himself and others. On January 25, 2002, Bill, as trustee, then transferred the remaining balance of the Trust A-2 assets (approximately seven million dollars) to the Bill Miller Trust.
 

 Bill died in April 2004. His son, Tom, then brought the underlying action against his estate, the personal representatives of his estate, the trustees of the Bill Miller Trust, and the Foundation (collectively referred to as “Appellants”) seeking,
 
 inter alia,
 
 to set aside the seven million dollar transfer to the Bill Miller Trust and to invalidate Bill’s purported exercise of his power of appointment. Pursuant to the terms of his mother’s trust, the seven million dollars would be held in trust for Tom’s benefit if he prevailed on
 
 both
 
 these issues.
 
 [1]
 

 In granting Tom’s motion for partial summary judgment, the trial court found that the transfer at issue was improper for three reasons: (1) it was contrary to the trust language limiting transfers to Elinor’s husband; (2) it was contrary to the trust language limiting transfers from “time to time;” and (3) it violated Bill’s duty to act in good faith to protect the interests of the Trust A-2 contingent re-maindermen. We respectfully disagree with the trial court’s conclusions.
 

 A court may grant summary judgment only if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Here, we agree with both parties that the interpretation of the Elinor Miller Trust documents is a question of law which is entitled
 
 *324
 
 to
 
 de novo
 
 review.
 
 See Fleck-Rubin v. Fleck,
 
 933 So.2d 38, 39 (Fla. 2d DCA 2006);
 
 Gallagher v. Dupont,
 
 918 So.2d 342, 346 (Fla. 5th DCA 2005).
 

 Tom argues that Elinor only authorized transfers from Trust A-2 to “my husband.” Based on this argument, Tom contends that the transfer to the Bill Miller Trust was invalid because Elinor was “not married” to the Bill Miller Trust. Appellants respond that the Bill Miller Trust was a revocable trust and, accordingly, a conveyance to the Bill Miller Trust was equivalent to a transfer to Bill Miller. We agree with Appellants. It is undisputed that Bill maintained 100% control over the Bill Miller Trust assets. Furthermore, he had the right to end the trust at any time and thereby regain absolute ownership over the trust property.
 
 Florida Nat’l Bank of Palm Beach Co. v. Genova,
 
 460 So.2d 895, 897 (Fla.1984). Thus, Bill had complete and unfettered access to the seven million dollars conveyed into his trust. In construing the provisions of a trust document, the cardinal rule is to give effect to the grantor’s intent, if possible.
 
 Knauer v. Barnett,
 
 360 So.2d 399, 405 (Fla.1978). We believe that in authorizing transfers of Trust A-2 assets to her husband, Elinor clearly intended to permit transfers to an entity, such as a revocable trust, over which her husband retained complete control and the right to absolute ownership.
 

 Tom next argues that the trust language “[t]he Trustee shall also pay to my husband such additional amounts of principal from Trust “A-2” as he may from time to time request” prohibited Bill from depleting the trust in “one fell swoop.” This argument is flawed for at least two reasons. First, the parties agree that Bill made transfers from Trust A-2, totaling $420,000, prior to the disputed seven million dollar transfer. Thus, Bill did, in fact, withdraw monies from Trust A-2 “from time to time.” Second, we conclude that the “from time to time” language was not intended by Elinor to serve as a limitation on Bill’s right to withdraw amounts of principal from Trust A-2. The trust document manifests a clear intent to permit Elinor’s husband to withdraw any and all monies from Trust A-2. To accept Tom’s argument would mean that it would have been improper for Bill to request payment of all of the Trust A-2 assets at one time, but proper if he had requested payment of all but $10. We are unwilling to assume that Elinor intended such an illogical result. Other jurisdictions have addressed this issue and have reached the same conclusion.
 
 See, e.g., Hoffman v. McGinnes,
 
 277 F.2d 598, 600-03 (3d Cir.1960) (trust provision stating “upon [the beneficiary’s] request” trustees “shall pay to her from time to time any part of the principal of my estate she may desire” granted beneficiary unrestricted power exercisable at any time during her life to use all or any part of principal of trust);
 
 State Tax Comm’n v. New England Merchants Nat’l Bank of Boston,
 
 355 Mass. 417, 245 N.E.2d 448, 449-50 (1969) (trust provision stating trustee “shall ... from time to time ... pay over such part or all of the principal ... to [each beneficiary] as he or she may in writing request” permitted beneficiary to withdraw principal at any time and such withdrawal not dependent upon trustee exercising its discretion);
 
 In re Keen’s Estate,
 
 80 Pa. D. & C. 377 (Pa. Orphans’ Ct.1951) (words “from time to time” did not diminish or qualify right to demand entire principal in lump sum).
 

 Pursuant to terms of the trust agreement, Bill had the absolute right to withdraw all of the Trust A-2 assets. He cannot be found to have acted in bad faith by exercising that right.
 
 Conn. Bank &
 
 
 *325
 

 Trust Co. v. Lyman,
 
 148 Conn. 273, 170 A.2d 130 (1961).
 

 Because we find that it was error for the trial court to set aside the seven million dollar transfer, we find it unnecessary to determine whether Bill properly exercised his power of appointment The trial court’s order granting Tom’s motion for partial summary judgment is hereby reversed.
 

 REVERSED and REMANDED.
 

 MONACO and COHEN, JJ., concur.
 

 [1]
 

 . The power of appointment issue is only relevant to the resolution of this appeal if the seven million dollar transfer is found to be invalid. If the transfer is found to be proper, Trust A-2 would appear to be devoid of any assets.