DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**PAULA MINASSIAN,**
Appellant,

v.

**REBECCA RACHINS** and **RICK MINASSIAN,**
Appellees.

No. 4D13-2241

[December 3, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Charles M. Greene, Judge; L.T. Case No. 12-1320 61.

Thomas F. Luken of The Andersen Firm, Fort Lauderdale, for appellant.

James A. Herb and Jennifer Fulton of Herb Law Firm, Boca Raton, for appellees.

WARNER, J.

In the midst of litigation in which the trustee of a family trust was being sued for accountings and breach of fiduciary duty, the trustee appointed a "trust protector," as allowed by the terms of the trust, to modify the trust's provisions. These modifications were unfavorable to the litigation position of the beneficiaries, and they filed a supplemental complaint to declare the trust protector's modifications invalid. The trial court found that, because the trust was unambiguous, the trust protector had no authority to change the terms of the trust. We conclude, however, that the trust provisions were ambiguous, that the settlor allowed for the trust protector to act to effectuate his intent, and that the amendment was not invalid. We therefore reverse.[1]

---

[1] We conclude that we have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.110(k), as the issue regarding the amendment of the trust by the trust protector is separate from the initial issues in the case and arose after the filing of the original complaint. This is the only issue for which this court has jurisdiction at this time.

Zaven Minassian ("husband") executed a statement of trust in 1999 and executed a re-statement of trust in 2008. The restatement created a revocable trust, which became irrevocable upon his death. He named himself and his wife as the sole trustees. After his death in 2010, his children filed a complaint against his wife alleging that she was improperly administering the trust. They claimed she had breached her fiduciary duties, sought a surcharge against her, and demanded an accounting of the trust.

## *The Restatement of Trust Document*

The husband established the trust for the primary purpose of taking care of himself and his wife. Both he and his wife remained trustees of the trust during the life of the husband, the settlor. Article 8 of the restatement of trust provides that, if the wife survived the husband, the trustee should divide the trust property into two separate trusts: the Marital Trust and the Family Trust. However, if the federal estate tax was not in effect at the time of the husband's death, the trust directed creation of only the Family Trust. The parties agree the latter circumstance occurred, and only the Family Trust was created.

Article 10, which created the Family Trust, empowers the trustee to distribute net income and principal of the Family Trust to the wife "as my Trustee, in its sole and absolute discretion, shall consider advisable for my spouse's health, education, and maintenance." The trustee is directed to "be mindful that my primary concern and objective is to provide for the health, education, and maintenance of my spouse, and that the preservation of principal is not as important as the accomplishment of these objectives." One of the provisions regarding investments empowers the trustee to purchase life insurance on the wife's life "as an investment for the Family Trust."

Article 10 also provides that "The Family Trust shall *terminate* at the death of my spouse. The remainder of the Family Trust, including any accrued and undistributed net income, shall be administered as provided in the Articles that follow." (Emphasis added). Article 11, which immediately follows, provides:

> *It is not my desire to create a Common Trust for the benefit of my beneficiaries.* Upon the death of my spouse, or if my spouse predeceases me, all of the trust property which has not been distributed under prior provisions of this agreement shall be divided, administered, and distributed under the provisions of the Articles that follow.

The provisions for administration after the death of the settlor's wife are contained in Article 12, which is entitled "The Distribution of My Trust Property." Section 1 is entitled, "Creation of Separate Shares," and provides: "All trust property not previously distributed under the terms of my trust shall be divided into a separate *trust share* for each of" the children. (Emphasis added). It directs the trustee to "create a *trust share* for each beneficiary . . . ." (Emphasis added). Article 15 names "Comerica Bank and Trust, National Association" as "Trustee for any trust share created under Article Twelve . . . or any other trust share created after the deaths of both me and my spouse . . . ."

### *Proceedings in the Trial Court*

The wife moved to dismiss the children's complaint against her, arguing they lacked standing because they were not beneficiaries of the trust. She pointed to the trust provisions in Articles 10-12, indicating that the Family Trust would terminate upon her death, and thus argued the children could not be beneficiaries of this trust. Instead, she argued, new trusts were to be created upon her death, of which the children would be the beneficiaries. The children claimed they had standing because the trust provisions did not create a new trust, but instead created separate shares in the existing Family Trust for each child upon the wife's death.

After reviewing the trust, the court denied the motion to dismiss, finding that Article 12's use of the word "shares," to describe the interest the children would receive after the death of the wife, prevented the court from concluding that new trusts were created. The court found "the wording simply [was not] clear" and decided it "would be inappropriate on the standing grounds to deny a forum for [the children] to seek relief."

After the trial court denied the motion, the wife appointed a "trust protector" pursuant to Article 16, Section 18 of the trust. This section authorizes the wife, after the husband's death, to appoint a trust protector "to protect . . . the interests of the beneficiaries as the Trust Protector deems, in its sole and absolute discretion, to be in accordance with my intentions . . . ." The trust protector is empowered to modify or amend the trust provisions to, *inter alia*: (1) "correct ambiguities that might otherwise require court construction"; or (2) "correct a drafting error that defeats my intent, as determined by the Trust Protector in its sole and absolute discretion, following the guidelines provided in this Agreement[.]" The trust protector can act without court authorization under certain circumstances. The trust directs the trust protector, prior to amending the trust, to "determine my intent and consider the interests of current and future beneficiaries as a whole," and to amend "only if the amendment

3

will either benefit the beneficiaries as a group (even though particular beneficiaries may thereby be disadvantaged), or further my probable wishes in an appropriate way." The trust provided that "any exercise . . . of the powers and discretions granted to the Trust Protector shall be in the sole and absolute discretion of the Trust Protector, and shall be binding and conclusive on all persons."

The wife filed an affidavit from her appointed trust protector stating he had "amend[ed], clarif[ied], and correct[ed] ambiguities to the Trust" to effectuate the settlor's intent. He purported to amend Article 12 to clarify that it was meant to create a new trust after the wife's death, and grant the children shares in the new trust. The new Article 12 was entitled, "The Distribution of the Remaining, if any, Trust Property Upon the Death of [the Wife]," and Section 1 was entitled, "Creation of a Trust With Separate Shares." The new Section 1 provided, "Upon the death of [the wife] and the termination of the Family Trust as provided in Article Ten, Section 7, if there is any property remaining, it shall be disbursed to a *new* trust to be created upon the death of [the wife] with a separate share for each of" the children. (Emphasis added).

The children filed a supplemental complaint challenging the validity of the provisions amended by the trust protector. Both parties then moved for summary judgment as to the validity of the trust protector amendments.

The court entered an order granting the children's motion for partial summary judgment and denying the wife's motion. The court found the trust protector's amendment was improper because it did not benefit the beneficiaries as a group or further the settlor's probable wishes, as required under the trust. The court found the amendment did not benefit all the beneficiaries because it would leave the children without the ability to challenge the actions of the wife as trustee, leaving her "to do as she wishes without having to annually account to the children . . . ." The court found the trust protector's amendment also did not further the settlor's probable wishes in an appropriate way because the settlor "clearly intended to provide for his children from the Family Trust at the time of his wife's death[.] The children were to share in whatever remained."

The court did not rely on the testimony of the trust protector in determining the husband's intent, instead finding that, "by examining the four corners of the document, and also examining the plain language he used, the meaning of the document is clear." The court relied on the original Article 12's reference to "trust shares." The court also noted that, in the provisions regarding the trust protector, the trust restatement

4

referred to "my spouse and beneficiaries." The court found this indicated "the entire trust was intended not only to benefit his wife, but also his children," because it "shows that when he speaks of his 'beneficiaries' he is referring to individuals other than his wife."

The court relied on several provisions it saw as establishing "[t]he continuity of the trust beyond the life or remarriage of the wife[.]" It cited the trustee's authority to purchase life insurance on the settlor's wife "as an investment for the Family Trust," reasoning, "[t]here would be no need for such an investment if the Family Trust ceased to exist upon the wife's death." The court rejected the literal language of Article 10, Section 7 – which provides the Family Trust terminates on the death of the wife and the remainder shall be administered as provided in the articles following Article 10 – because "there would be no 'remainder' if the trust actually terminated, and the '[a]rticles that follow' create 'separate trust shares' not trusts."

As further proof that Article 12 did not create a new trust for the children upon the wife's death, the court relied on Article 12, Section 2, which noted that the trust shares of the husband's children, if passed down by inheritance, would be "administered as a separate trust[.]" The court reasoned that this "shows [the husband] knew how to create new trusts, and only does so after his children die[.]" The court concluded, "If the Trust Protector wished to amend a drafting error to effectuate the settlor's intent or benefit all the beneficiaries, he should have amended Article 10, Section 7, which speaks of termination of the trust[.]"

The court entered partial summary judgment for the children, invalidating the amended provisions, and the wife timely appealed.

### *Analysis*

We first address the validity of the trust protector provision in the trust, because if it is invalid under Florida law, then any amendments created by the trust protector would likewise be invalid. On the other hand, if those provisions are valid, then the trust provides that the trust protector can exercise his powers in his sole and absolute discretion, and his actions are binding and conclusive on all persons.

The Florida Trust Code provides: "The terms of a trust may confer on a trustee *or other person a power to direct the modification or termination of the trust."* § 736.0808(3), Fla. Stat. (2008) (emphasis added). This section was adopted from the Uniform Trust Code, which contains identical

5

language in section 808(c). See Unif. Trust Code § 808 (2000). The commentary to this section states:

> Subsections (b)-(d) ratify the use of *trust protectors* and advisers. . . . Subsection (c) is similar to Restatement (Third) of Trusts Section 64(2) (Tentative Draft No. 3, approved 2001). . . . "Trust protector," a term largely associated with offshore trust practice, is more recent and usually connotes the grant of greater powers, sometimes including the power to amend or terminate the trust. Subsection (c) [as enacted in section 736.0808(3), Florida Statutes] ratifies the recent trend to grant third persons such broader powers. . . .
>
> The provisions of this section may be altered in the terms of the trust. *See* Section 105. A settlor can provide that the trustee must accept the decision of the power holder without question. Or a settler could provide that the holder of the power is not to be held to the standards of a fiduciary. . . .

*Id.* at Editors' Notes (emphasis supplied). *See generally* Peter B. Tiernan, *Evaluate and Draft Helpful Trust Protector Provisions*, 38 ESTATE PLANNING 24 (July 2011).

The children make two arguments as to the inapplicability of section 736.0808(3). First, they contend that this provision conflicts with "the black letter common law rule . . . that a trustee may not delegate discretionary powers to another." Second, they argue that sections 736.0410-736.04115 and 736.0412, Florida Statutes, provide the exclusive means of modifying a trust under the Florida Trust Code. We reject both arguments.

As to the conflict with the common law, which precludes non-delegation of a trustee's discretionary powers, this argument fails for two reasons. First, it is not the trustee that is delegating a duty in this case, but the settlor of the trust, who delegates his power to modify to a third person for specific reasons. Second, "The common law of trusts and principles of equity supplement [the Florida Trust Code], *except to the extent modified by this code* or another law of this state." § 736.0106, Fla. Stat. (2008) (emphasis added); *see also* Abraham Mora, et al., 12 FLA. PRAC., ESTATE PLANNING § 6:1 (2013-14 ed.) ("The common law of trusts supplements the Florida Trust Code unless it contradicts the Florida Trust Code or any other Florida law."). Thus, section 736.0808, Florida Statutes, supplements common law, and to the extent the common law conflicts with it, it overrides common law principles.

Sections 736.0410-736.04115 and 736.0412, Florida Statutes, provide means of modifying a trust under the Florida Trust Code. The children argue the terms of the trust cannot prevail over these provisions, so as to add a method of modification via trust protector, because section 736.0105 provides, "The terms of a trust prevail over any provision of this code except . . . [t]he ability to modify a trust under s. 736.0412, except as provided in s. 736.0412(4)(b)." § 736.0105(2)(k), Fla. Stat. (2008). Yet section 736.0808(3), Florida Statutes, expressly allows a trust to confer the power to direct modification of the trust on persons other than trustees. "[A] court must consider the plain language of the statute, give effect to all statutory provisions, and construe related provisions in harmony with one another." *Hechtman v. Nations Title Ins. of New York*, 840 So. 2d 993, 996 (Fla. 2003). These provisions of Chapter 736 can be harmonized by concluding that the sections on modifying trusts do not provide the exclusive means to do so, at least insofar as a trust document grants a trust protector the power to do so. Otherwise, section 736.0808(3) would have no effect. Therefore, we conclude that the Florida Statutes do permit the appointment of a trust protector to modify the terms of the trust.

The trial court found that the trust protector acted outside his powers, because he amended a trust instrument that the trial court found to be unambiguous. Thus, the trial court concluded, the trust protector's amendment was contrary to the husband's intent, as expressed in the unambiguous trust document. We, however, conclude that the instrument was indeed ambiguous.

The trial court's interpretation of the trust documents is reviewed *de novo*. *See Vetrick v. Keating*, 877 So. 2d 54, 56 (Fla. 4th DCA 2004) (reviewing summary judgment interpreting trust document, noting review was *de novo*); *see also Wells Fargo Bank, N.A. v. Morcom*, 125 So. 3d 320, 321 (Fla. 5th DCA 2013) ("The standard of review governing the ruling of a trial court on a motion for summary judgment posing a pure question of law is *de novo*.").

Generally, "[t]he polestar of trust or will interpretation is the settlor's intent," which should be "ascertained from the four corners of the document through consideration of 'all the provisions of the will [or trust] taken together . . . .'" *Bryan v. Dethlefs*, 959 So. 2d 314, 317 (Fla. 3d DCA 2007) (quoting *Sorrels v. McNally*, 105 So. 106, 109 (Fla. 1925)). Where the terms of a trust agreement are unambiguous, the court should not refer to parol evidence to interpret its meaning. *In re Estate of Barry*, 689 So. 2d 1186, 1187-88 (Fla. 4th DCA 1997). "The fact that both sides ascribe different meanings to the language does not mean the language is

ambiguous so as to allow the admission of extrinsic evidence." *Bryan*, 959 So. 2d at 317 n.2 (quoting *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003)).

The provisions of the trust at issue here are conflicting. Article 10 provides that on the death of the trustee, the trust shall terminate. Article 11 states that it is *not* the intent of the settlor to create a common trust for his wife and other beneficiaries. However, Article 12 then directs that upon the death of the wife the trust assets shall be distributed into separate trust "shares" for the beneficiaries. The term "share" makes these trust provisions ambiguous, as it is unclear whether the term share constitutes a new trust.

Other provisions in the trust document support the interpretation, contrary to the trial court's one-trust interpretation, that the husband intended to create separate trusts for the wife and children. Article 11 contains his specific admonition that he did not intend to create a common trust. In the trust protector provisions, the document several times refers to the creation of multiple trusts: a trust protector "may be appointed for *any* trust created in this agreement"; "*All trusts* created under this instrument need not have or continue to have the same Trust Protector"; and "the Trust Protector may, with respect to *any* trust as to which the Trust Protector is acting . . . ." (Emphasis added). Article 15 of the trust also includes provisions for appointing a trustee for "My Beneficiaries' Separate Trusts," i.e., "any trust share created under Article Twelve . . . or any other trust share created after the deaths of both me and my spouse . . . ." Article 15, Section 3(f) provides that a beneficiary who attains the age of 35 shall serve as the trustee of his or her respective trust share. These are but some of the provisions which refer to both trusts and trust shares, even though the overall structure of the trust contemplates something separate and apart from the Family Trust.

Moreover, the provisions relied upon by the trial court in determining that there was only one trust (the Family Trust) do not unambiguously support its conclusion. First, the court believed that the reference to multiple "'beneficiaries' in the plural" showed that the Family Trust was to benefit the children, but that language is also consistent with the existence of multiple trusts.

Second, the court pointed to Article 10, Section 7 – that the wife shall not receive any benefits from the trust should she remarry, but could again receive benefits under the Family Trust if her re-marriage ends – as indicating the continuity of the trust beyond the life or remarriage of the wife. This, however, does not defeat the argument that the Family Trust

8

terminates on her death, because Article 10, Section 7 covers only her remarriage. Thus, the family trust would continue until her death, but the wife could not draw from it after remarriage. This is not at all inconsistent with termination at the death of the wife.

Third, while the court thought that the ability to purchase life insurance on the wife showed that only one trust was intended, that provision was simply an investment provision and the trustee could not use trust income for such purchase. The trustee might wish to purchase life insurance on the settlor's wife as an investment for the Family Trust or to pay last expenses for the wife, even if the Family Trust terminates on her death, because the remaining property in the trust will be used to fund the children's trusts.

The trial court also relied on its conclusion that "there would be no 'remainder' if the [Family] [T]rust actually terminated[.]" Although it may not be proper to refer to such an interest as a "remainder," distributees are entitled to the trust property upon the termination of a trust, as directed in the trust document. *See* § 736.0410, Fla. Stat. (2008) ("[A] trust terminates to the extent the trust . . . is properly distributed pursuant to the terms of the trust."); § 736.0817, Fla. Stat. (2008) ("Upon the occurrence of an event terminating or partially terminating a trust, the trustee shall proceed expeditiously to distribute the trust property to the persons entitled to the property . . . ."); *see, e.g., Yates v. Wessel*, 775 So. 2d 993, 994 (Fla. 4th DCA 2000) (noting "[t]he duration of a trust is governed by the trust instrument," and interpreting the trust as terminating on death of settlors, "at which time, under the trust, the property was to be distributed to" their daughter). In fact, Article 12 is titled "The Distribution of My Trust Property" and uses the term "distribution" throughout that section.

In sum, the single-trust interpretation reached by the trial court does not appear to be unambiguously supported by the trust document. We therefore reject the trial court's conclusion that the trust is unambiguous. In fact, we find that it is patently ambiguous on the issue of whether a new trust is created, where the language in the trust instrument dictates that the Family Trust terminates on the death of the wife.

Although the trial court did not consider it, there was uncontradicted evidence in the record as to the husband's intent, including an affidavit and deposition from the trust protector, who was the original drafter of the trust instrument. "Where as here . . . there is a patent ambiguity as to the testator's intent, the court below was free to consider extrinsic evidence on

the subject." *First Union Nat'l Bank of Fla., N.A. v. Frumkin*, 659 So. 2d 463, 464 (Fla. 3d DCA 1995).

The trust protector testified in a deposition that he met with the husband twice, first in person to discuss his estate planning desires, and second over the phone to discuss and execute the documents he had drafted. During the husband's life, the husband and wife's "lives revolved around horse racing and legal gambling," and, in the trust, the husband wanted "to provide for [the wife] in the way they had lived in the past . . . ." The plan was "to create a separate Trust for the benefit of his children" which "would be created only if the Family Trust described in Article 10 . . . was not exhausted during [the wife's] lifetime[.]" The purpose of Article 10, Section 7 and Article 11 was "to assure that the Family Trust was not in any way associated to a new Trust that might be created for his children." The trust protector also stated, "This challenge by the children is exactly what [the husband] expected." The trust protector noted that the husband referred to his daughter in derogatory terms, and that the daughter had not seen her father in years.

From the trust protector's affidavit, it appears that the husband settled on the multiple-trust scheme for the very purpose of preventing the children from challenging the manner in which the wife spent the money in the Family Trust during her lifetime. The trust protector also testified that his law firm always recommends this split-trust approach, rather than what he referred to as a "pot trust . . . where everything goes into the pot for the beneficiaries." He testified, "We have never done it the other way you're talking about, about keeping the same trust." On that basis, he prepared the amendments to the trust to reflect this intent of the testator.

Based upon our conclusion that the trust agreement was ambiguous and the trust protector's amendments were made to effectuate the settlor's intent, the amendments that he made to the trust are within his powers. The amendments may have disadvantaged the children, but the trust protector was authorized the correct ambiguities with the limitation that he act *either* to benefit a group of beneficiaries *or* to further the husband's probable wishes. He acted to correct ambiguities in a way to further the husband's probable wishes. As the drafting agent, he was privy to what the husband intended.

It was the settlor's intent that, where his trust was ambiguous or imperfectly drafted, the use of a trust protector would be his preferred method of resolving those issues. Removing that authority from the trust protector and assigning it to a court violates the intent of the settlor.

We therefore reverse the partial final judgment of the trial court and remand with directions that the trust protector's amendments are valid. We reject all other arguments made by the children against the validity of these provisions, although not ruling on any matters beyond that issue.

CONNER and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***