# Third District Court of Appeal

## State of Florida

Opinion filed March 5, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0884
Lower Tribunal No. 22-19333-CA-01
_____

**Jeff Lieberman, etc., et al.,**
Appellants,

vs.

**James Sloto, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Beatrice Butchko Sanchez, Judge.

Bangor Law, PLLC, and Loretta Bangor (Lake Worth); Sackrin & Tolchinsky, P.A., and Alan D. Sackrin (Hallandale Beach), for appellants.

Boies Schiller Flexner LLP, Bruce A. Weil, and Robert G. Keefe, for appellee.

Before FERNANDEZ, LINDSEY and MILLER, JJ.

FERNANDEZ, J.

Plaintiffs/appellants Jeff Lieberman ("Lieberman") and Lieberman's counsel, Sackrin & Tochinsky, P.A. and Alan D. Sackrin (collectively, plaintiff's counsel),[1] appeal the trial court's Final Judgment assessing sanctions against appellants pursuant to section 57.105, Florida Statutes (2022), as well as the trial court's order denying appellants' motion for rehearing. For the following reasons, we reverse the Final Judgment awarding 57.105 fees to defendant/appellee James Sloto ("Sloto" or "the Trustee").

Mel Stier ("Mel") was the grantor of the Mel Stier Revocable Trust Agreement dated May 10, 1999 as Amended and/or Restated (the "Trust"). Mel established the Trust to leave the Trust's assets to his son, Harrison Stier ("Harrison"). One of the Trust's assets is a 40% ownership interest in and control over 953 Realty Corporation ("953 Realty"), which owns and operates commercial real estate properties. Mel died on October 12, 2019.

Sloto is the Successor Trustee of the Trust. He is a licensed attorney since 1976. Lieberman is the Successor Trust Protector of the Trust. Sackrin and his law firm, Sackrin & Tolchinsky, P.A. represent Lieberman.

---

[1] Lieberman and plaintiff's counsel will be referred to collectively as "appellants."

The Trust in question gives the Trust Protector numerous responsibilities, powers, and discretion. For example, section 4.09 of the Trust only allows claims against the Trust Protector in the event the Trust Protector is proven by clear and convincing evidence to have acted in bad faith. According to section 4.11(a), the Trust Protector can correct ambiguities that might otherwise require construction or reformation by a trial court. Section 4.11(a) further provides that any amendment is "binding and conclusive on all persons interested in the trust" and that the Trust Protector may not be liable for any consequences of amending or not amending the Trust. Under section 4.11(k), the Trust Protector may settle any disputes concerning the interpretation of any provision in the Trust that arise out of any perceived ambiguity. In addition, the Trust Protector has the right to remove the Trustee with or without cause, according to section 4.11(e). Section 4.11(g)(7) provides that the Trust Protector may direct the Trustee to select or vote for directors . . . or officers of any business. Furthermore, section 4.11(h)(4) provides that the Trust Protector may also direct the trustee to retain, appoint, employ, or remove any. . . employees at will. Specifically, section 4.12 states, in part:

**Limitation on Trust Protector Powers**

**. . .**

> In exercising and considering whether to exercise any power granted to a Trust Protector under this agreement, the Trust Protector **should make a reasonable inquiry** into any matter or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

(Emphasis added). On August 18, 2022, Sloto appointed Harrison as President of 953 Realty. Sloto stated he appointed Harrison as President based on his observations of Harrison's interactions with 953 Realty's property managers, Harrison's educational background, and Harrison's familiarity with 953 Realty's business and properties gained from the years Harrison spent learning from his father, Mel.

On September 6, 2022, Lieberman directed Sloto to remove Harrison as President of 953 Realty. Lieberman stated he possessed all the knowledge he needed about Harrison's qualifications to serve as President of 953 Realty without performing an investigation or making reasonable inquiry into the matter. Lieberman has known Harrison since Harrison was five years old. He believed that in his discretion, Harrison was unqualified to be President of 953 Realty. Thus, on September 6th, 2022, Lieberman instructed Sloto to remove Harrison. Harrison, who was twenty-two years old at the time of his appointment as President, graduated college approximately three months before his appointment. He never held a paying job prior to his appointment as President of 953 Realty. Lieberman stated that had Sloto

4

advised Lieberman of his intention to appoint Harrison as President, Lieberman would have told Sloto not to hire Harrison and to select someone with substantial experience in managing a commercial real estate company that was experiencing challenges. Harrison was an at-will employee. Sloto had the power to remove Harrison with or without cause. Lieberman had the authority to instruct Sloto to remove Harrison pursuant to several provisions of the Trust - either by directing a discharge because there was a contract terminable at will or because Lieberman could order the dismissal of an officer or director or demand that Sloto abstain from voting for Harrison. Sloto did not comply with Lieberman's directive.

On October 7, 2022, Lieberman filed the underlying lawsuit to compel Sloto to remove Harrison as President of 953 Realty. Sloto moved to dismiss the complaint or alternatively for a more definite statement, contending that Lieberman's allegations were insufficient to put Sloto on notice as to the basis for Lieberman's decision to direct Harrison's removal. Sloto argued that Lieberman did not allege any facts about Harrison's performance as President that occurred during the months before the filing of the motion to dismiss the complaint. The motion did not allege that Lieberman did not comply with section 4.12 of the Trust.

On December 7, 2022, the trial court held a hearing on Sloto's motion. There was no court reporter present, so there is no transcript of the hearing. The trial court granted Sloto's motion for a more definite statement and granted Lieberman leave to file an amended complaint.

Thereafter, Lieberman filed an amended complaint in December 2022. In the amended complaint, Lieberman alleged there was malfeasance because Harrison paid a trustee bill for services from the account of 953 Realty instead of out of the account for the Trust. However, Lieberman maintained that he did not have to prove cause or malfeasance as a condition for directing Sloto to remove Harrison. Sloto then served Lieberman with a 21-day safe-harbor letter and an attached motion for 57.105 fee sanctions.

On March 16, 2023, the last day of the 21-day safe-harbor period, Lieberman filed a second amended complaint, which removed several allegations from the amended complaint. Sloto thereafter served Lieberman with another 21-day safe-harbor letter. Lieberman did not withdraw the second amended complaint within the 21-day safe-harbor period, so Sloto filed a motion for sanctions pursuant to section 57.105. Sloto argued that under section 4.12 of the Trust, Lieberman knew that he had to conduct a "reasonable inquiry" before filing a claim.

6

On April 20, 2023, Sloto filed a motion for summary judgment. He argued that section 4.12 prohibited Lieberman from directing Harrison's removal without "reasonable inquiry," and that there is no dispute that Lieberman did not do so. On June 23, 2023, Lieberman filed a Statement of Facts in Opposition to Sloto's motion for summary judgment and attached the Declaration of Jeff Lieberman. In his Declaration, Lieberman stated the reasons why he believed Harrison was not qualified to be President, including his lack of experience and because Harrison had just graduated from college. In addition, Lieberman stated the following:

> 20. To the extent there is a perceived ambiguity, I have or will be serving and enacting an amendment to Trust Agreement section 4.12 to clarify that section 4.12 is not mandatory and that the Trust Protector need not make a reasonable inquiry into any matter or seek any information that reasonably bears upon the Trust Protector's decision to exercise a power when the Trust Protector believes he or she has sufficient information to make a reasonably informed decision on whether to exercise a power granted to the Trust Protector. The use of the word "should" connotes permissive, not mandatory, action. I did not need to make reasonable inquiry to seek additional information that would or would have changed my mind that Harrison Stier is not qualified to be President of a multi-million dollar commercial real estate company, especially one with challenges ahead.

On June 21, 2023, Lieberman filed an amendment to section 4.12 of the Trust which stated, in part:

> The use of the word "should" in the last sentence signifies it is not mandatory. If the Trust Protector reasonably believes that he or she has sufficient information independent of any inquiry to

7

decide on the exercise of the Trust Protector's powers under this Trust Agreement, then the Trust Protector is under no obligation to make any further inquiry or seek any other information that bears upon the Trust Protector's decision. No inquiry is ever required when the Trust Protector is authorized to order the removal of a person "without cause" or perform any other act "without cause."

Thereafter, on July 24, 2023, the trial court granted summary judgment for Sloto on Lieberman's second amended complaint. The trial court found it was undisputed that: Lieberman did not "make a reasonable inquiry" before directing Sloto to remove Harrison as president of 953 Realty and before filing the lawsuit; that Lieberman did not "seek any information that reasonably bear upon" his decision before directing Sloto to remove Harrison before filing the lawsuit; and that Lieberman was unaware of any "instances of substantial malfeasance" alleged in the second amended complaint when he directed Harrison's removal. In addition, the trial court found:

> 7. The Court concludes that the Trust, including Section 4.12, is clear, unambiguous, and susceptible of only one reasonable interpretation. In particular, the word "should" in Section 4.12 unambiguously means that the Trust Protector must either "make reasonable inquiry" or "seek any information that reasonably bear upon" the Trust Protector's decision to exercise "any power" granted to the Trust Protector under the Trust. . . .And the "plain and ordinary meaning" of the word "should" in section 4.12 is that the Trust Protector must either "make reasonable inquiry" or "seek any information that reasonably bear upon" the Trust Protector's decision to exercise "any power" granted to the Trust

8

Protector under the Trust. Should, Merriam-Webster.com Dictionary, Merriam-Webster, https://merriam-webster.com/dictionary tense of *shall*" that is "used in auxiliary function to express *obligation*, propriety, or expediency" (emphasis added); *see Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023) ("Dictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested, and we look t them when a contractual term is undefined within a contract.").

8. The Court concludes that [Lieberman's] purported post hoc amendment to the meaning of the word "should" in Section 4.12 is void and without effect because the meaning of the word "should" in Section 4.12 is unambiguous. The Trust authorizes the Trust Protector to amend the trust to "correct ambiguities" and to "settle any disputes concerning the interpretation of any provision contained" in the Trust "that arise as a result of any perceived ambiguity." See Trust Agreement § §4.11(a), 4.11(k). Because the meaning of the word "should" in Section 4.12 is unambiguous as a matter of law, [Lieberman] is without authority to amend its meaning.

Lieberman moved to file a third amended complaint, which the trial court denied.

Thereafter, the trial court conducted an evidentiary hearing on Sloto's motions for sanctions pursuant to section 57.105. The trial court received documentary evidence and hearing testimony from Lieberman and Sackrin. On November 15, 2023, the trial court entered its order granting Sloto's motion for 57.105 fee sanctions. The trial court found that Lieberman knew

9

before filing the initial Complaint, First Amended Complaint, and Second Amended Complaint that he failed to comply with section 4.12 before directing Sloto to remove Harrison as President of 953 Realty, and that Sackrin, at the latest, knew before filing of the Second Amended Complaint that Lieberman failed to comply with section 4.12 before directing Sloto to remove Harrison as President of 953 Realty.

Accordingly, the trial court found that the standards for sanctions pursuant to section 57.105 had been "overwhelmingly met" because Lieberman and Sackrin acted in bad faith "by filing the Second Amended Complaint despite knowing that there was no evidence *whatsoever* that [Lieberman] had complied with Section 4.12 before directing [Sloto] to remove Harrison Stier from his position and/or filing the instant lawsuit." (Emphasis in original). The trial court thus ruled Sloto was entitled to reasonable attorneys' fees and costs as a sanction against Lieberman and his counsel.

After an evidentiary hearing held in January 2024 to determine the amount of reasonable attorney's fees and costs, the trial court entered Final Judgment awarding Sloto his reasonable attorney's fees and costs against Lieberman and his attorneys. Appellants moved for rehearing, which the trial court denied. This appeal followed.

10

## DISCUSSION

Appellants contend that the trial court erred in awarding 57.105 sanctions against Lieberman and his counsel because their argument that the use of the word "should" in section 4.12 of the Trust is advisory and not so devoid of merit that it warrants 57.105 fee sanctions. Appellants still believe that Lieberman had the authority under the Trust to resolve the issue of the meaning of the word "should." We agree with appellants.

Generally, an appellate court reviews a trial court's order awarding attorney's fees under section 57.105 for an abuse of discretion. MC Liberty Express, Inc. v. All Points Servs., Inc., 252 So. 3d 397, 402 (Fla. 3d DCA 2018). However, if the trial court's decision on a motion for attorney's fees is based on an issue of law, the standard of review is *de novo*. Wells v. Halmac Dev., Inc., 189 So. 3d 1015, 1019 (Fla. 3d DCA 2016). A trial court's interpretation of trust documents is reviewed de novo. Vetrick v. Keating, 877 So. 2d 54, 56 (Fla. 4th DCA 2004).

"[T]he polestar of trust . . . interpretation is the settlor's intent[.]" Minassian v. Rachins, 152 So. 3d 719, 725 (Fla. 4th DCA 2014). In interpreting the terms of a trust agreement, the court looks to the plain language of the document. Fleck-Rubin v. Fleck, 933 So. 2d 38, 39-40 (Fla.

2d DCA 2006). "Where the terms of an instrument are clear and unambiguous, there is no need for the court to engage in construction of such instrument." Barnett First Nat. Bank of Jacksonville v. Cobden, 393 So. 2d 78, 79 (Fla. 5th DCA 1981). "If the trust language is unambiguous, the settlors' intent as expressed in the trust controls and the court cannot resort to extrinsic evidence." Roberts v. Sarros, 920 So. 2d 193, 195 (Fla. 2d DCA 2006). "However, where there is ambiguity or uncertainty arising from the language used which obscures the intent of the testator or [grantor], construction of the instrument is necessary." Cobden, 393 So. 2d at 79. "The grantor's intent should not be determined by resort to isolated words and phrases, but rather by a construction of the instrument as a whole ......." Pounds v. Pounds, 703 So. 2d 487, 488 (Fla. 5th DCA 1997).

In State v. Thomas, 528 So. 2d 1274 (Fla. 3d DCA 1988), this Court interpreted the word "should" in a Florida sentencing statute. The Court stated:

> As we perceive it, the State's argument is that "should" is the equivalent of "shall" and that "shall" is mandatory. **While we acknowledge that "should" retains its arcane, schoolmarm meaning as a past tense of "shall," its modern usage is as the weaker companion to the obligatory "ought." Thus, it is said that "[o]ught should be reserved for expressions of necessity, duty, or obligation; should, the weaker word, expresses mere appropriateness, suitability or fittingness."** B. Garner, *A Dictionary of Modern Legal Usage* 396 (1987). See University of South Florida v. Tucker, 374 So. 2d 16, 17 (Fla. 2d

12

DCA 1979) ("Use of the word 'should' indicates to us that the procedure ... is discretionary rather than mandatory in nature"). See also Cuevas v. Superior Court, 58 Cal. App. 3d 406, 409, 130 Cal. Rptr. 238, 239 (1976) ("The word 'should' is used in a regular, persuasive sense, as a recommendation, not as a mandate."); Starks v. Kentucky Health Facilities, 684 S.W. 2d 5, 7 (Ky. Ct. App.1984) ("Appellant's argument that the statutory use of the word 'should' is to be construed as 'shall,' inasmuch as should is the past tense of shall, is without merit."); Texas & P. Ry. Co. v. Consolidated Co., 180 La. 180, 187, 156 So. 215, 217 (1934) ("The word 'should' in the rule which the plaintiff invokes is directory. Being directory, a deviation is excusable under proper circumstances."); Magnuson v. County of Grand Forks, 97 N.W. 2d 622, 624 (N.D. 1959) ("We construe the word 'should' as used here to be persuasive rather than mandatory."); Baldassarre v. West Oregon Lumber Co., 193 Or. 556, 563, 239 P.2d 839, 842 (1952) (" '[S]hould' frequently implies a command, a duty or an obligation. But this is not always so."); Roanoke Memorial Hospitals v. Kenley, 3 Va. App. 599, 606, 352 S.E. 2d 525, 529 (1987) (should "may be used to import discretion."). But even if, arguendo, we were to accept the extremely doubtful synonymy of "should" and "shall," the simplistic argument that "shall" is necessarily mandatory ignores the well-accepted rule that "[w]hether 'shall' is mandatory or discretionary will depend ... upon the context in which it is used and the legislative intent expressed in the statute." Allied Fidelity Insurance Co. v. State, 415 So. 2d 109, 111 (Fla. 3d DCA 1982). See Ewing v. Kaplan, 474 So. 2d 302 (Fla. 3d DCA 1985).

Id. at 1275-76 (emphasis added). Similarly, in University of South Florida v. Tucker, 374 So. 2d 16 (Fla. 2d DCA 1979), the Second District Court of Appeal stated that use of the word "should" in an administrative code rule indicated "to us that the procedure for [employee] resignations is **discretionary rather than mandatory** in nature." Id. at 17 (emphasis added).

13

Here, the terms of the Trust in question allowed the Trust Protector to modify the terms of the Trust. For example, section four gives the Trust Protector certain powers and discretion. The Trust authorizes the Trust Protector to fire the Trustee with or without cause; change the beneficiaries of the trust; amend or modify the Trust; change the law applicable to the Trust; or even terminate the Trust, among many other powers. The Trust Protector also has the authority to direct the Trustee to make certain investments, fire employees, hire or fire officer or directors or abstain from voting on any corporate matter, and to direct business operations and management.

The trial court's order awarding 57.105 fee sanctions held that Lieberman violated section 4.12 by failing to conduct "any inquiry." However, in Lieberman's Declaration he filed with his Statement of Facts in Opposition to Sloto's motion for summary judgment, Lieberman stated he already knew about Harrison, as Lieberman had known Harrison since he was approximately five years old. Lieberman explained his history of personal knowledge of Harrison and Harrison's qualifications. Lieberman believed that as a 22-year-old recent college graduate who had never held a job, Harrison was not qualified to be President of a commercial real estate company, which was a major trust asset. Lieberman already had the knowledge he needed

14

to make the decision he did, based on his judgment. Lieberman thus did not need to make any inquiry about Harrison before directing Sloto to remove Harrison as President.[2] The trial court failed to consider Lieberman's prior knowledge of Harrison and his qualifications. Here, the trial court erred when it held the word "should," used in section 4.12, unambiguously means "must" and created a duty for the Trust Protector to conduct a "reasonable inquiry" before exercising his powers under the Trust Agreement.

The complaint in the underlying case was filed by Lieberman as Trust Protector of the Trust solely to request that the trial court order Sloto to remove Harrison as President of 953 Realty after Sloto refused to follow Lieberman's direction. Lieberman contends that the meaning of the word "should" in section 4.12 is unambiguously advisory instead of mandatory. But Lieberman further correctly contends that if "should" is ambiguous, then he had, as the Trust Protector, exclusive authority and discretion under the Trust to resolve the ambiguity. The terms of the Trust gave the Trust Protector power to correct any ambiguities that would require construction or reformation by a court. The Trust Protector could settle any disputes concerning the interpretation of any provision in the Trust that arose out of

---

[2] Also, the Trust did not require that the Trust Protector identify any wrongdoing on Harrison's part before directing that Harrison be removed as President.

any ambiguity. Stier's intent was to avoid involving the courts in resolving issues that arose under the Trust. As the Trust agreement stated, any amendment is "binding and conclusive" on "all persons interested in the trust" unless the "amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector." Here, there was no clear and convincing evidence presented by Sloto to show bad faith on Lieberman's part.

Lieberman clarified in the amendment that the word "should" is not mandatory, and he also clarified that "[i]f the Trust Protector reasonably believes that he or she has sufficient information independent of any inquiry to decide on the exercise of the Trust Protector's powers under this Trust Agreement, then the Trust Protector is under no obligation to make any further inquiry or seek any other information that bears upon the Trust Protector's decision." Lieberman further explained in the amendment that if the Trust Protector can direct that someone be discharged "without cause", then no inquiry is required. The Trust Agreement specifically granted Lieberman as Trust Protector the power to amend. Thus, a valid amendment to the Trust clarifying the meaning of the word "should" would be binding on the trustee, beneficiaries, and the court. Accordingly, the trial court should have given weight to Leiberman's interpretation of the trust. As the appellate

16

court stated in <u>Minassian</u>, supra, "It was the settlor's intent that, where his trust was ambiguous or imperfectly drafted, the use of a trust protector would be his preferred method of resolving those issues. Removing that authority from the trust protector and assigning it to a court violates the intent of the settlor." <u>Minassian</u>, 152 So. 3d at 727. If the word "should" in the section 4.12 is ambiguous and subject to interpretation, then the Trust Protector was not required to make a reasonable inquiry into any matter or seek information which reasonably bore upon his decision to order Trustee Sloto to remove the person (Harrison) selected by Sloto to be the President of 953 Realty.

Accordingly, the word "should" is either 1) unambiguously advisory rather than mandatory, or 2) it is ambiguous. Therefore, it was error for the trial court to conclude that "should" in section 4.12 unambiguously means "shall." Because "should" is, at a minimum, ambiguous, the Trust Protector had the sole authority pursuant to the Trust to interpret or clarify the meaning of the word "should." Resolving the ambiguity as Lieberman did with the amendment defining "should" in section 4.12 to mean non-mandatory comports with the intent of the settlor. Thus, 57.105 fees were not warranted here, and the trial court abused its discretion in awarding them to Sloto.

17

For these foregoing reasons, we reverse the Final Judgment awarding section 57.105 fee sanctions to Sloto, including the Order Granting Defendant's Motions for Sanctions Pursuant to Section 57.105.

Reversed.